wo

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Ricardo Chavez-Cornejo, | No. CV-07-2089-PHX-ROS |
| Petitioner, | **ORDER** |
| vs. | |
| Michael Mukasey, et al., | |
| Respondents. | |

On October 26, 2007, Petitioner filed an application for Writ of Habeas Corpus, alleging that his continuing custody by the Department of Homeland Security (DHS) violates the Immigration and Nationality Act (INA) as well as Petitioner's right to due process, equal protection, and freedom from cruel and unusual punishment under the Fifth and Eighth Amendments of the United States Constitution (Doc. 1). On November 12, 2008, after receiving Respondents' various response papers, Magistrate Judge Charles R. Pyle issued a Report and Recommendation, recommending Petitioner's application be granted unless Petitioner received a bond hearing before an immigration judge (Doc. 25). Neither party filed a timely objection to the reviewing magistrate judge's Report and Recommendation. On November 25, 2008, Petitioner filed a motion for extended time to apply for a bond hearing (Doc. 26). After reviewing the papers filed, the Court will dismiss Petitioner's application.

**Background**

On October 11, 2005, DHS detained Petitioner for reentering the United States after receiving a final deportation order, entering the United States without proper inspection, and entering the United States by falsely claiming United States citizenship (Doc. 16 Ex. 1-3).[1] On October 19, 2005, Petitioner received a bond hearing before an immigration judge, who set Petitioner's bond at $75,000 (Doc. 16 Ex. 5). On March 9, 2006, an immigration judge ordered Petitioner's removal from the United States (Doc. 16 Ex. 11). Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals, which affirmed the removal order on June 7, 2006 (Doc. 16 Ex. 12). On July 7, 2006, Petitioner appealed his final removal order with the Ninth Circuit (Doc. 16 Ex. 16). On October 4, 2006, the Ninth Circuit stayed execution of Petitioner's final removal order pending the conclusion of judicial review proceedings (Doc. 16 Ex. 16). On October 4, 2007, DHS Office of Immigration and Customs Enforcement conducted a review of Petitioner's custody status and denied Petitioner's release (Doc. 16 Ex. 15).

**Discussion**

**1. Standard**

A "district judge may refer dispositive pretrial motions and petitions for writ of habeas corpus to a magistrate, who shall conduct appropriate proceedings and recommend dispositions." Thomas v. Arn, 474 U.S. 140, 141 (1985); see 28 U.S.C. § 636(b)(1)(B); Estate of Connors v. O'Connor, 6 F.3d 656, 658 (9th Cir. 1993). Any party "may serve

---

[1] See 8 U.S.C. § 1182(a)(9)(C)(i)(II) ("Any alien who – has been ordered removed . . . and who enters or attempts to reenter the United States without being admitted is inadmissible;" 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General is inadmissible;" 8 U.S.C. §§ 1227(a)(1)(A), 1182(a)(6)(C)(ii) ("Any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable" –  in this case, for falsely claiming United States citizenship).

and file written objections" to the magistrate's report and recommendation. 28 U.S.C. § 636(b)(1). "A judge of the court shall make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." Id. A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

**2. Petitioner's Constitutional Due Process and INA Claims**

**A. Bond Hearing**

Petitioner's strongest argument, with which the reviewing magistrate judge agreed, is that he is entitled to "an individualized determination of the facts and circumstances" surrounding his continued DHS custody and that DHS' failure to provide such a determination renders his detention unlawful vis-a-vis the Immigration and Nationality Act (INA) as well as the Due Process Clause of the Fifth Amendment (Doc. 1 at 4). According to Petitioner and the reviewing magistrate judge, Petitioner merits habeas relief because: (A) criminal aliens who have been mandatorily detained pursuant to 8 U.S.C. § 1226(c) do not receive bond determinations upon arrest and must receive such a determination, after issuance of a final removal order, for their continued detention to be legal; (B) Petitioner is such an alien. Petitioner and the magistrate cite the correct law. See Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942, 950-51 (9th Cir. 2008) ("In *Tijani*, we held that an alien initially detained under § 1226(c) could not continue to be detained during his judicial review process unless he was afforded an individualized hearing before an IJ [immigration judge] . . . we believe *Tijani* was correct that § 1226(c) does not authorize prolonged mandatory detention after an alien's administrative proceedings are complete [issuance of a final removal order]."); see also Tijani v. Wills, 430 F.3d 1241, 1242 (9th Cir. 2005). However, Petitioner's facts distinguish his case from both Tijani and Casas-Castrillon.

Petitioner's claim rests on the assumption that DHS detained him pursuant to 8 U.S.C. § 1226(c), which requires mandatory civil detention of various classes of criminal aliens. That statute, in clear terms, prevents DHS from releasing from custody those criminal aliens

- 3 -

1 included in the prescribed classes during the aliens' administrative removal proceedings. See
2 8 U.S.C. § 1226(c) ("The Attorney General *shall* take into custody any alien who– [fits into any
3 prescribed class] . . . The Attorney General *may release* an alien described in paragraph (1) *only if*
4 [list of narrow exceptions]") (emphasis added).  In this way, criminal aliens detained pursuant to §
5 1226(c) are ineligible for bond during their administrative removal proceedings and do not receive
6 bond hearings upon arrest.  The line of cases cited by Petitioner and the reviewing magistrate
7 requires that such criminal aliens receive a bond hearing once their removal orders become
8 administratively final, usually as the alien awaits judicial review of the removal order.

9 However, no evidence in the record suggests Petitioner was mandatorily detained as
10 a criminal alien pursuant to § 1226(c) or was denied a bond hearing upon being detained.
11 To the contrary, the immigration charges lodged against Petitioner and for which he was
12 ultimately found removable – illegal reentry, illegal entry, and claiming false United States
13 citizenship – are absent from the prescribed classes of criminal aliens subject to mandatory
14 detention under § 1226(c) (Doc. 16 Ex. 2-3).  See § 1226(c)(1)(A)-(D).  Because DHS did
15 not charge Petitioner as a member of any of the § 1226(c) prescribed classes, his detention
16 by DHS was not authorized by § 1226(c), but rather by 8 U.S.C. § 1226(a), under which
17 DHS "may continue to detain the arrested alien; and may release the alien – on bond . . . or
18 conditional parole".  Accordingly, soon after Petitioner's arrest, Petitioner received a bond
19 determination before an immigration judge, who granted bond and set Petitioner's bail at
20 $75,000 (Doc. 16 Ex. 5).  In this way, DHS lawfully detained Petitioner pursuant to §
21 1226(a) and, as a matter of standard procedure, provided him with a bond hearing before an
22 immigration judge who subsequently set a $75,000 bail.  The reason Petitioner remains in
23 custody is because he failed to post the October 2005 bond.  DHS violated neither the INA
24 nor Petitioner's right to due process simply because Petitioner failed to post bond.[2]

25

26 [2]The source of confusion is Petitioner's 1988 conviction for conspiracy to distribute and
27 possession with intent to distribute marijuana under 21 U.S.C. § 846 (Doc. 16 Ex. 3).  Although
DHS listed this conviction on Petitioner's charging documents, it never charged Petitioner as
28 inadmissible or deportable because of his prior criminal drug conviction (Doc. 16 Ex. 3).  See e.g.

- 4 -

1    The magistrate judge raises additional concerns regarding "whether this bond is still
2 available to Petitioner and whether this bond was established through a hearing that comports
3 with *Tijani* standards" (Doc. 25 at 5).  No evidence demonstrates that Petitioner's October
4 2005 bond hearing was unusual or extraordinary in any way.  Conversely, the record of
5 Petitioner's immigration court proceedings strongly suggests Petitioner's bond hearing was
6 conducted according to proper procedure and pursuant to immigration court regulations,
7 given that Petitioner received a bond hearing soon after his arrest and that he was ultimately
8 granted bond.  See 8 C.F.R. 1003.19.  Cf. Casas-Castrillon, 535 F.3d at 952 (bond hearing
9 was procedurally inadequate when held under "unusual circumstances," that is well after
10 alien's arrest and subsequent removal hearing, in response to a Ninth Circuit decision that
11 was later overruled by the Supreme Court).

12    While the magistrate's second concern – the issue of Petitioner's current ability to post
13 bond – is an important one, it is not ripe for decision.  The record does not suggest that
14 Petitioner has ever attempted to post the $75,000 bond set in October 2005.  Certain evidence
15 in the record does suggest DHS may not allow Petitioner to post this bond because DHS
16 officials are under the mistaken assumption that Petitioner is being detained as an alien
17 awaiting removal, pursuant to 8 U.S.C. § 1231, and is thus ineligible for bond (Doc. 16 Ex.
18 15).  See 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General *shall*
19 detain the alien.") (emphasis added).  This assumption is mistaken because an alien, like

---

8 U.S.C. §§ 1182(a)(2)(C), 1227(a)(2)(B) (grounds of inadmissibility and deportability concerning controlled substance violations).  For Petitioner to be subject to mandatory detention as a criminal alien under § 1226(c), the statute requires that Petitioner "is inadmissible" or "is deportable" as a criminal alien, which, at the very least, means DHS must have charged Petitioner as an inadmissible or deportable criminal alien.  8 U.S.C. § 1226(c)(1).  See In re Jurado-Delgado, 24 I. & N. Dec. 29, 31 (BIA 2006) ("We have long held that an alien must be charged and found deportable where Congress has used the phrase 'is deportable.'"); see also e.g. Matter of Leybinsky, A73 569 408 (BIA Mar. 2, 2000) (unpublished) (holding that an alien is only subject to mandatory detention under § 1226(c) if he is charged as inadmissible or deportable for a criminal offense listed in the statute).  In this case, DHS charged Petitioner for illegal reentry, illegal entry, and falsifying United States citizenship – not criminal acts covered under § 1226(c)(1).  See supra Note 1.

- 5 -

Petitioner, who is judicially appealing a final removal order and has received a stay of removal from the reviewing court is not considered to have entered his "removal period" and thus his detention is not governed by § 1231, but rather by § 1226(a). 8 U.S.C. § 1231(a)(1)(B)(ii); see also Prieto-Romero v. Clark, 534 F.3d 1053, 1060 (9th Cir. 2008) ("When the court of appeals has issued a stay, however, the alien may not be detained under any subsection of § 1231(a) unless and until the court finally denies the alien's petition for review."). However, DHS has not denied Petitioner's attempt to post the October 2005 bond. Only then will DHS have violated the INA and will Petitioner have a basis for habeas relief.

### B. Indeterminate Detention

Petitioner further argues that the length of his detention, "with no termination point in sight and no longer incident to removal," violates the terms of the Immigration and Nationality Act, as interpreted by Zadvydas v. Davis, 533 U.S. 678 (2001) (Doc. 1 at 4). Petitioner is correct that a detained alien, awaiting judicial review of his final removal order, may not be detained indefinitely. See Prieto-Romero, 534 F.3d at 1062-63 ("we conclude that § 1226(a) . . . also does not authorize indefinite detention . . . we construe the Attorney General's detention authority under § 1226(a) as limited to the 'period reasonably necessary to bring about [an] alien's removal from the United States'") (citing Zadvydas, 533 U.S. at 689). However, Petitioner's detention is far from indefinite. To satisfy this standard, Petitioner must show he is procedurally "stuck in a 'removable-but-unremovable limbo,' as the petitioners in *Zadvydas* were . . . unremovable because the destination country will not accept him or his removal is barred by our own laws." Id. at 1063 (citing Jama v. Immigration & Customs Enforcement, 543 U.S. 335, 347 (2005)). Upon completion of the Ninth Circuit's review of Petitioner's final removal order, he will most likely either be allowed to remain in this country or be removed to Mexico, his country of origin (Doc. 16 Ex. 1). Because the only obstacle to Petitioner's removal is his own choice to contest his removal, neither Zadvydas nor Prieto-Romero are applicable.

### 3. Petitioner's Equal Protection Claim

Petitioner next argues that 8 U.S.C. § 1226, as interpreted by the federal courts, violates his Fifth and Fourteenth Amendment right to equal protection of the laws (Doc. 1 at 4). Petitioner refers to recent Supreme Court decisions requiring DHS to parole aliens who are awaiting execution of final removal orders to countries for which "there is no significant likelihood of removal in the reasonably foreseeable future," but not requiring similar parole for nationals of other countries, despite their prolonged detention awaiting execution of removal. See e.g Zadvydas, 533 U.S. at 701. Petitioner argues that no rational basis exists to require DHS to parole from immigration detention certain aliens, such as those from countries like Cuba or Laos with which the United States has no repatriation agreement, while allowing DHS to detain similarly situated aliens from other countries for much longer periods of time. See Cordes v. Gonzalez, 421 F.3d 889, 896 (9th Cir. 2005), *vacated on other grounds* (immigration laws distinguishing classes of aliens are reviewed for rational basis). Petitioner's argument has no merit. Congress intends to remove all aliens who are not entitled to remain in this country (especially those with final removal orders) and has granted DHS a robust detention authority to ensure the removal of those aliens. However, Congress did not intend to subject aliens to unending, and ultimately pointless, immigration detention when DHS is unable to remove them tho their country of origin for various international political or human rights reasons. This distinction, between those aliens whom DHS is able to remove and those whose removal is extremely unlikely, is rational and survives Petitioner's equal protection challenge.

### 4. Petitioner's Cruel and Unusual Punishment Claim

Petitioner lastly, citing Robinson v. California, 370 U.S. 660 (1962), claims that his immigration detention criminalizes his status and thus constitutes cruel and unusual punishment, in violation of the Eighth Amendment (Doc. 1 at 4). This claim is also without

- 7 -

merit. Although often severe, detention pursuant to removal (or deportation) is not punishment and thus cannot be found to violate the Eighth Amendment. See LeTourneur v. Immigration & Naturalization Serv., 538 F.2d 1368, 1370 (9th Cir. 1976) (holding that deportation cannot constitute criminal punishment under the Eighth Amendment).

Accordingly,

**IT IS ORDERED** grounds 2-4 of Petitioner's Application For Writ of Habeas Corpus (Doc. 1 at 4) **ARE DENIED WITH PREJUDICE**. These claims have no merit and shall not be reasserted.

**FURTHER ORDERED** ground 1 of Petitioner's Application For Writ of Habeas Corpus (Doc. 1 at 4) **IS DENIED WITHOUT PREJUDICE**. Plaintiff may renew his application for habeas corpus relief if DHS prevents him from posting the $75,000 bail set by the immigration court on October 19, 2005.

**FURTHER ORDERED** Petitioner's motion for extension of time (Doc. 26) **IS DENIED AS MOOT**. Plaintiff does not need to apply for a bond hearing. If he wishes to post bond, the option is available as per the October 19, 2005 immigration court ruling.

DATED this 20th day of January, 2009.

Roslyn O. Silver
United States District Judge